Wright, J.,
delivered the opinion of the Court.
The complainant, Sugg, is an attaching creditor of the defendant A. J. Powell.
The object of his bill is to subject to his debt a judgment in favor of said Powell, against B. D. Holt, for $414.14, rendered the 19th of May, 1856, before David Stephens, a justice of the peace.
The complainant’s bill was filed the 19th of June, 1856.
It appears that T. B. Marks held a note upon A. J. Powell, in which his father, John Powell, and one Clanton were his securities for $380, which, between the first and fifteenth of May, 1856, was placed in judgment against John Powell, one of the sureties, before S. G-. Miller, a justice of the peace.
It is contended by John Powell that the promissory note upon which the judgment against Holt was taken, was, prior to the rendition of said judgment, transferred and delivered to him by A. J. Powell, as indemnity against the debt on which he was surety to Marks; and that he was to collect said note, and apply so *223 much of its proceeds as might be necessary, in payment of the debt to Marks, and in his own discharge as surety."
He insists, therefore, that he is entitled to priority oyer the complainant Sugg, so far as may be necessary for his indemnity.
The Chancellor so held, and we concur in the decree.
It is admitted in the record that John Powell has paid the debt to Marks. And it is proved to our satisfaction that the note upon Holt, before it was put in suit, or reduced to judgment, was transferred and delivered by A. J. Powell to John Powell, expressly for his indemnity.
This took place more than a month previous to the issuance or service of the attachment in favor of Sugg.
We are satisfied of this fact upon proof independent of anything stated by Mitchell Powell.
Marks proves that A. J. Powell told him he had left the claim on Holt in the hands of John Powell, to pay the debt to him; and he, in effect, establishes, that when he afterwards saw John Powell, he had possession of [the note, and offered to let him have it in payment of the debt due him.
Davis, the constable, who had the note for collection, proves, that when he received it of Mitchell Powell, he told him it was to go to pay the debt to Marks.
Parker, in April, 1856, heard a conversation between Sugg and A. J. Powell, which, we take it, referred to the note on Holt; and the effect of which, by Powell, was that John Powell had and claimed the note to secure him against the Marks’ debt.
*224 Clanton proves that A. J. Powell told him he had given his father the note on Holt to pay the debt to Marks.
Mitchell Powell proves the same thing, and that he received the note of his father, as his agent, to carry to Davis, the constable, for collection; that he placed the note in the hands of Davis for that purpose — took his receipt and handed it to John Powell; and that he stated to Davis the use to which the note was to be applied, and that it belonged to John Powell for the purpose of paying the debt to Marks.
It is true Davis does not remember that he mentioned the claim of John Powell upon the note, but still we cannot doubt the fact that the note was placed in his hands for his indemnity. All this took place previous to the filing of Sugg’s bill; and the position that A. J. Powell’s acts and declarations, anterior to that time, are not evidence of John Powell’s title, is untenable. 1 Greenl. Ev., sections 180, 189, 190.
The transfer of the note to John Powell being established, it follows that his equity is superior to that of Sugg. Nolen v. Crook et al., 5 Hum., 312.
It is said Holt, the debtor in the note, should have had notice of its transfer to John Powell; and that, until this was given, his title was not complete, and the debt might be attached by Sugg as the effects of A. J. Powell. And to sustain this position we are referred to Clodfelter v. Cox, 1 Sneed, 330. But the doctrine of that case has no application to negotiable paper, as was held by this Court in the Mutual Protection Insurance Company v. Hamilton et al. 5 Sneed, 269.
"We affirm the decree